IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JEFFREY D. PARSONS,                  )
                                              )
              Plaintiff,                )     TC-MD 200040N
                                              )
          v.                       )
                                              )
DEPARTMENT OF REVENUE,         )
State of Oregon,                    )
                                            )
              Defendant.        )    **DECISION**

        Plaintiff appealed Defendant's Notice of Assessment, dated December 16, 2019, for the 2015 tax year, requesting "elimination of the tax assessment." The parties agreed to submit this matter to the court for decision on a written record composed of the stipulated facts, exhibits, and written arguments. The parties declined to schedule a trial or other evidentiary hearing to present witness testimony. This matter is now ready for decision.

## I. STATEMENT OF FACTS[1]

        In 2015, Plaintiff owned two houses: one in Gresham where he lives and the other on Thomas Road in Sandy, Oregon. (Def's Ex E at 1.) He bought the Thomas Road property in 1998 for its "income potential," paying $188,000. (*Id.* at 1, 6.) Property tax statements for the Thomas Road property reflect a real market value of $342,282 in 2014 and $527,778 in 2018. (Ptf's Ex 1 at 23.) The Thomas Road property is 19.7 acres with a house, barn, trailer and well. (*Id.* at 7.) The house is a 1,728-square foot single family residence built in 1978 with three bedrooms and two bathrooms. (*Id.* at 23.) Plaintiff initially rented out the house but stopped

---

[1] The parties presented a limited set of stipulated facts, relying instead of exhibits. Many exhibits reflect statements made by Plaintiff or his representative to Defendant, such as auditor's notes and letters. Ordinarily, this court would not rely on facts found by Defendant because this is a *de novo* proceeding. However, the parties declined to present testimony at trial and did not object to any facts reflected in the exhibits.

doing so in 2005 "because it needed lots of work." (*Id.* at 7; *see also* Stip Facts.) He planned to remodel it. (Def's Ex H.) Plaintiff told the auditor he made no personal use of the house but in his written objection alleged that he used the house "for rest periods and bathroom facilities throughout the year when he was working on the farm property." (Def's Ex E at 1; Ptf's Ex 1 at 3.) Plaintiff rented out a one-acre trailer space at the Thomas Road property for $400 per month in 2015. (Ptf's Ex 1 at 7; Def's Ex E at 1.) He reported no other income from the Thomas Road property from 2012 through 2015. (Ptf's Ex 1 at 7.)

A.      *Farming Activities*

Plaintiff's first farming activity at the Thomas Road property was "pasturing beef cows," and then he "tried raising hay." (Def's Ex E at 6.) Both of those activities ceased before 2015. (Ptf's Ex 1 at 8, Ex 2 at 3.) "When these activities did not generate sufficient income, he decided to implement a long-term strategy of raising organic crops." (Def's Ex E at 6.) Organic land certification from Oregon Tilth requires 36 months. (Def's Ex F at 1.) Plaintiff did some "interim testing of the soil and * * * progressing toward this goal" of organic certification. (Def's Ex E at 2.) "He has potential customers for organic products lined up but can't start production until he gets the certification." (*Id.*) Plaintiff used "the barns, tractors, trailers, compacters" and other items "to get the land prepared for organic certification." (*Id.*) He made 116 trips to the farm in 2015, mostly on weekends. (*Id.* at 6.) In addition to preparing the land for organic certification, Plaintiff allowed a neighbor to cut hay and "keep[] it for his use in exchange for promising not to use any chemicals on his property that might leach into [Plaintiff's] property." (*Id.* at 2.)

Plaintiff provided a farm management plan for the Thomas Road property. (Def's Ex H.) It reflects six acres for livestock, eight acres for hay and food production, four acres for forest

production, one acre for the trailer, and one acre for the house. (*Id.*) With respect to the livestock, food, and hay areas, Plaintiff wrote that the property was "fenced and field in hay, barn erected for feed storage, fields being 'cleaned' of noxious weeds with plans to put into 'Organic' production in spring." (*Id.*) Plaintiff anticipated both fields would be ready to apply for organic certification in spring 2019. (*Id.*) With respect to the forest area, Plaintiff planned to rebuild the access road. (*Id.*) He planned "to retire from his carpentry job and devote all of his time to farming" in 2019. (Def's Ex E at 3.) Plaintiff's representative described Plaintiff's preparation as follows:

> "In pursuit of his farming activities he has kept meticulous records. He has sought and gained extensive knowledge of water availability for irrigation, land use, master gardening, animal husbandry, and organic farming through workshops, publications, books and soliciting advice from local organic farmers. * * * * * He has spent considerable time and effort working the land, planting fruit trees, maintaining buildings and fences, making road improvements, removing rocks, raking, mowing, discing and removing noxious weeks (by hand when necessary)."

(*Id.*)

B.      *Plaintiff's 2015 Tax Return and Defendant's Adjustments*

On his 2015 personal income tax return, Plaintiff reported a loss of $25,900 from rental real estate. (Ptf's Ex 1 at 15.) Defendant made several adjustments to Plaintiff's return, resulting in additional tax due. (*See id.* at 5-11 (Notice of Deficiency).) Of relevance to this appeal, Defendant allowed $3,217 in Schedule E rental expenses and disallowed the balance of $28,679.[2] (*Id.* at 7.) Although Plaintiff did not originally file a Schedule F, he provided a proposed Schedule F during the audit, allocating some of the disallowed Schedule E expenses to Schedule F. (*Id.* at 7-8, 51, 55.) Defendant determined that $11,446 in Schedule F farm

---

[2] Defendant allowed auto and travel expenses, insurance, mortgage interest, taxes, and utilities.

expenses must be capitalized as start-up costs because the farm property was not in service as of the 2015 year. (*Id.* at 8-9.) Plaintiff proposed to deduct on his Schedule A mortgage interest that Defendant disallowed on his Schedule E associated with the Thomas Road property.[3] (*Id.* at 9, 56-57.) Defendant disallowed the mortgage interest because Plaintiff did not use the property as a home during 2015. (*Id.* at 9 (stating Plaintiff must have used the house more than 14 days or more than 10 percent of the number of days the house was rented).)

Plaintiff submitted a Written Objection in response to the Notice of Deficiency. (Ptf's Ex 1 at 1-3.) Plaintiff objected to the classification of his farming expenses as "start-up" expenses, asserting that "a cash basis farmer is not subject to the Sec 263A uniform capitalization rules."[4] (*Id.* at 2.) Plaintiff noted that, for the three years preceding 2015, he "realize[d] profits on the appreciation and sale of farm assets." (*Id.*) He supplied his tax returns from 2012 through 2014, showing that he sold several tractors. (*Id.* at 16-21.) Plaintiff further noted that the Thomas Road property had appreciated in value as reflected in the county assessor's records. (*Id.* at 2.) Plaintiff also disputed Defendant's disallowance of mortgage interest on the Thomas Road property, arguing that "the vacation home rules * * * do not apply in this case." (*Id.* at 3.)

Defendant issued its Written Objection Determination on December 10, 2019, upholding the audit adjustments. (Ptf's Ex 2 at 2.) Noting Plaintiff had filed no Schedules F since at least 2009, Defendant concluded Plaintiff's farming activity was in a start-up phase. (*Id.* at 3-4.) It rejected Plaintiff's argument concerning the uniform capitalization rules because it takes three

---

[3] Defendant allowed additional real estate taxes of $3,684 on Plaintiff's Schedule A associated with the Thomas Road property. (Ptf's Ex 1 at 9.)

[4] Plaintiff supplied various excerpts from the Federal Tax Coordinator 2d. (Ptf's Ex 1 at 30-37.) The excerpts stated that the uniform capitalization rules do not "apply to any plant which has a preproductive period of two years or less which is produced by a farming business." (*Id.* at 34, 37.) However, "plants that have a preproductive period that exceeds two years are subject to the uniform capitalization [] rules and must be included in inventory or capitalized." (*Id.*)

years to achieve organic certification.  (*Id.* at 3.)  With respect to the mortgage interest, Defendant cited the 14-day rule for personal use of a qualified residence when the residence is used as a rental.  (*Id.* at 4.)  Defendant concluded that "[t]he property was not available for or rented during 2015.  In addition, the property was not repaired or renovated within 24 months. Therefore, the property does not qualify as a second residence." (*Id.* at 4.)

## II.  ANALYSIS

Two issues are presented for the 2015 tax year.[5]  First, whether Plaintiff was carrying on an active farming business within the meaning of Internal Revenue Code (IRC) 162(a).  Second, whether the Thomas Road property was a qualified residence for which Plaintiff may deduct mortgage interest under IRC section 163(h).  Plaintiff, as the party seeking affirmative relief, bears the burden of proof and must establish his case by a preponderance of the evidence.  *See* ORS 305.427.[6]  A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [his] burden of proof * * *."  *Reed v. Dept. of Rev.*, 310 OTR 260, 265 (1990).

The legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]"  ORS 316.007(1).  In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *."  ORS 316.012.

---

[5] The substantiation of claimed expenses is not at issue.  (Stip Facts at 1, ¶ 3.)

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

On the issues presented, Oregon has made no modifications relevant to this case so the court looks to the IRC and its administrative and judicial interpretations. *See* ORS 316.032.

A.      *Whether Plaintiff Carried on a Farming Business in 2015*

IRC section 162(a) allows a deduction for all the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." *Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987). "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." *Higgins v. Comm'r*, 312 US 212, 217, 61 S Ct 475, 85 L Ed 783 (1941).

The question here is whether Plaintiff was "carrying on" a farming business in 2015. That term is not defined in the code or regulations. Courts have interpreted the term by distinguishing between "pre-opening expenses" and ordinary business expenses; that is, "expenses incurred between the decision to establish a business and the actual beginning of business operations." *Richmond Television Corp. v. U.S.*, 345 F2d 901, 905 (4th Cir 1965), *vacated and remanded for consideration of amortization claims* 382 US 68 (1965).

> "[E]ven though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not 'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized."

*Id.* at 907. Courts use "pre-opening expenses" and "start-up expenditures" interchangeably. *See, e.g., Johnsen v. Comm'r*, 794 F2d 1157, 1162-63 (6th Cir 1986) ("Section 195 permits

corporations and individuals to amortize start-up or pre-opening expenses").[7]

One rationale for the pre-opening expense doctrine is that such expenses are often capital in nature, like expenses incurred to create or acquire an asset. *See Johnsen*, 794 F2d at 1162; *see also Fishman v. Comm'r*, 837 F2d 309, 312 (7th Cir 1988) (pre-opening or start-up costs "yield benefits over the entire life of the enterprise, and therefore must be capitalized").[8] Accordingly, courts examine the nature of the expenses when considering whether they are deductible under IRC section 162(a). *See U.S. v. Manor Care*, 490 F Supp 355, 362 (D Md 1980) (allowing deduction where "the expenses were the type incurred in the normal operation of the" business and that "produced benefits to the corporations within the same tax year"). "[W]hile it is true that an enterprise need not have generated sales or other revenue to have begun to carry on a business, it must nonetheless have started to function in a particular and identifiable line of work." *Weaver v. Comm'r*, 87 TCM (CCH) 1259, 2004 WL 938293 at *6 (US Tax Ct).

Plaintiff described his business as farming "organic crops and livestock." (*See* Ptf's Ex 1 at 58 (Schedule F).) Accordingly, cases involving farming are instructive. In *Reems v. Comm'r*, 67 TCM (CCH) 3050, 1994 WL 243475 (US Tax Ct), the court held that the taxpayer had not yet commenced a timber business where he purchased a parcel of land, paid for repair and maintenance of logging roads on the land, and sold two trees and some firewood.

In *McKelvey v. Comm'r*, 83 TCM (CCH) 1339, 2002 WL 341044 at *3-4 (US Tax Ct), the taxpayer conducted a "economic and market feasibility study" before purchasing a 39.2-acre parcel of forestland with a barn and cabin for the purpose of starting a tree-farming business. He

---

[7] IRC section 195 permits a deduction for "start-up expenditures" in the tax year "in which the active trade or business begins[.]"

[8] For a lengthier discussion of the "pre-operating expense" doctrine, *see Briesmeister v. Dept. of Rev.*, TC-MD 180319N, 2019 WL 1300550 (Or Tax M Mar 19, 2019).

paid for a forest management plan and did a "pilot test" planting of 51 trees. *Id.* However, as of the tax year at issue, he still had not decided which species of trees to plant or harvested any trees. Viewing those facts in the light most favorable to the taxpayer, the court concluded that the taxpayer was still "investigating the feasibility of creating a tree farm on his property" so any expenses incurred were "start-up expenses for which no current deduction is allowed." *Id.* at *4.

In *Heinbockel v. Comm'r*, 105 TCM (CCH) 1733, 2013 WL 1953732 (US Tax Ct), the taxpayers "bought a piece of raw land in wine country" intending to establish a vineyard. They hired an architect to draft plans and purchased a tractor to grade the land. *Id.* at *4. However, due to protracted legal battles with the neighbors and county, they never planted any grapes and sold the land three years later. *Id.* The court concluded that the taxpayers' expenses were start-up in nature and must be capitalized. *Id.* at *17. In *McMillan v. Comm'r*, 118 TCM (CCH) 188, 2019 WL 4013977 at *9 (US Tax Ct), the taxpayer had a long history owning and working with horses, including participating in dressage competitions and breeding her horse for stud fees from 1992 through 1997. As of the tax year at issue — 2010 — she no longer owned any horses, but she "she was in the market for a horse." *Id.* at *9. She watched five dressage competitions and performed 36 hours of horse exercising for barter income. *Id.* The court found she was not actively engaged in a horse breeding/showing business. *Id.*

Upon consideration, the court finds that Plaintiff was not carrying on a farming business in 2015, but rather was in a start-up phase preparing for a future organic farming business. The nature of the expenses he incurred — to prepare the land for eventual organic certification — are not ordinary expenses that would be incurred every year in a farming business. As in *McKelvey*, *Reems*, and *Heinbockel*, preparing the land for a future farming business does not qualify as carrying on a current farming business; such expenses are capital in nature. The outcome here is

not altered by Plaintiff's previous farming activities (cattle and hay) at the Thomas Road property. Those activities had ceased by 2015[9] and Plaintiff was pursuing new farming activities. As in *McMillan*, a history of farming activity and extensive knowledge of farming does not necessarily mean the taxpayer is presently carrying on a farming business. Finally, Plaintiff pointed to the sale of some farm assets, such as tractors, between 2012 and 2015. Selling farm assets does not demonstrate that an organic farming operation had begun.

In his exhibits, Plaintiff referenced the multi-factor test under Treasury Regulation 1.183-2 used to determine whether an activity was engaged in for profit. (*See* Ptf's Ex 1 at 13, Ex 4 at 2.) However, Defendant did not disallow Plaintiff's farming expenses on that basis. (Def's Ex C at 1 (Written Objection Determination).) Because the court has concluded that Plaintiff's farming activity had not progressed beyond a start-up phase as of the 2015 tax year, the court need not analyze whether Plaintiff possessed the requisite profit motive. *See McKelvey*, 2002 WL 341044 at *1 (declining to consider the IRC section 183 issue after concluding the taxpayer's expenses were start-up expenses).

B.      *Whether Plaintiff May Deduct Mortgage Interest on the Thomas Road Property*

IRC section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." However, no deduction is allowed for "personal interest paid or accrued during the taxable year." IRC § 163(h)(1). The term "personal interest" is defined as *excluding* "qualified residence interest." IRC § 163(h)(2)(D). "Qualified residence interest" is "any interest which is paid or accrued during the taxable year on" either "acquisition indebtedness" or "home equity indebtedness with respect to any qualified residence of the taxpayer." IRC §

---

[9] It is not clear when those activities ceased, but likely before 2009 because Plaintiff did not file any Schedules F after 2009.

163(h)(3)(A). A "qualified residence" is the taxpayer's principal residence within the meaning of IRC section 121 and one other residence selected by the taxpayer for the taxable year that "is used by the taxpayer as a residence (within the meaning of section 280A(d)(1))." IRC § 163(h)(4)(A).[10] With respect to the taxpayer's second residence, IRC section 163(h)(4)(A)(iii) states that, "notwithstanding section 280A(d)(1), if the taxpayer does not rent a dwelling unit at any time during a taxable year, such unit may be treated as a residence for such taxable year."

Treasury Regulation 1.163-10T(p)(3)(ii) expands upon the definition of "residence" for purposes of IRC section 163(h), stating:

> "Whether property is a residence shall be determined based on all the facts and circumstances, including the good faith of the taxpayer. A residence generally includes a house, condominium, mobile home, boat, or house trailer, that contains sleeping space and toilet and cooking facilities. A residence does not include personal property, such as furniture or a television, that, in accordance with the applicable local law, is not a fixture."

The regulation reiterates that IRC section 280A(d)(1) applies to a residence that is rented during the taxable year. "If a residence is not rented at any time during the taxable year, it shall be considered to be used as a residence." Treas Reg § 1.163-10T(p)(3)(iii).

Vacant land does not qualify as a residence for purposes of IRC section 163(h). *See Garrison v. Comm'r*, 67 TCM (CCH) 2896, 1994 WL 168274 (US Tax Ct) (vacant lot where taxpayers camped each year was not a "qualified residence" for purpose of the interest deduction under IRC section 163(h)(3).) However, "[a] taxpayer may treat a residence under construction as a qualified residence for a period of up to 24 months, but only if the residence becomes a qualified residence, without regard to this paragraph (p)(5)(i), as of the time that the residence is

---

[10] IRC section 280A(d)(1) states that "a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of— (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental."

ready for occupancy." Treas Reg § 1.163-10T(p)(5)(i). The regulation provides an example of a taxpayer who "owns a residential lot suitable for the construction of a vacation home" who then "obtains a mortgage secured by the lot and any property to be constructed on the lot." Treas Reg § 1.163-10T(p)(5)(ii).

Plaintiff claims a mortgage interest deduction on the Thomas Road property as a qualified second residence under IRC section 163(h). Defendant disallowed that deduction for two reasons. First, it cited Plaintiff's failure to use the house for the specified number of days under IRC section 280A(d)(1). Second, it cited Plaintiff's failure to repair or renovate the house within 24 months, presumably referring to the "residence under construction" rule in the regulations. Neither reason is persuasive. Defendant's first reason misconstrues the applicable code section. IRC section 163(h)(4)(A)(iii) states that section 280A(d)(1) does not apply when the taxpayer does not rent the dwelling unit during the tax year. That reading is confirmed by the regulation that expressly states, "[i]f a residence is not rented at any time during the taxable year, it shall be considered to be used as a residence." Treas Reg § 1.163-10T(p)(3)(iii). The parties stipulated that the house on the Thomas Road property was rented until 2005. It was not rented 2015. Therefore, IRC section 280A(d)(1) does not apply.

Defendant's second reason appears to be based upon Plaintiff's statement that the house "needed lots of work" and he planned to remodel it. The court did not receive evidence of the scope of repairs required. However, there is no evidence to suggest that the house ceased to meet the basic definition of a residence as containing "sleeping space and toilet and cooking facilities." Treas Reg § 1.163-10T(p)(3)(ii). The property tax record described the house as a single-family dwelling with three bedrooms and two bathrooms. Plaintiff stated that he used the house for restroom facilities and rest breaks when he was working at the property. Those facts

indicate that the house was a "residence."  The "residence under construction" rule appears to provide an exception for vacant land that would not otherwise qualify for the mortgage interest deduction.  The example provided concerns a vacant lot upon which the taxpayer planned to construct a vacation house, not an existing house requiring repairs.  The court finds nothing in the code or regulations to suggest that a house ceases to be a residence when it needs repairs.  Accordingly, the court finds that the Thomas Road property was a "qualified residence" under IRC section 163(h) and Plaintiff may deduct mortgage interest on that property.

### III.  CONCLUSION

Upon careful consideration, the court concludes that Plaintiff was not carrying on a farming business within the meaning of IRC section 162(a) as of the 2015 tax year; the activity was in a start-up phase.  The court further concludes that the Thomas Road property was a qualified second residence within the meaning of IRC section 163(h).  Accordingly, Plaintiff may deduct mortgage interest on that property for the 2015 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for the 2015 tax year is granted in part and denied in part.

Dated this _____ day of November 2020.


---
ALLISON R. BOOMER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency.
Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Presiding Magistrate Allison R. Boomer and
entered on November 23, 2020.*